IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

TIMOTHY P. JILEK,                    )      CASE NO. 5:07 cv 2987
                                     )
                    Plaintiff,       )
                                     )
                                     )      MAGISTRATE JUDGE McHARGH
                                     )
              v.                     )
                                     )
MICHAEL J. ASTRUE,                   )      **MEMORANDUM OPINION**
Commissioner                         )
of Social Security,                  )
                                     )
                    Defendant.       )

        This case is before the Magistrate Judge pursuant to Local Rule.  The issue before the

undersigned is whether the final decision of the Commissioner of Social Security

("Commissioner") denying Plaintiff Timothy P. Jilek's application for Disability Insurance

benefits under Title II of the Social Security Act, 42 U.S.C. §§416(i) and 423, and Supplemental

Security Income benefits under Title XVI of the Social Security Act, 42 U.S.C. §1381 *et seq.*, is

supported by substantial evidence and, therefore, conclusive.

        For the reasons set forth below, the Court REVERSES and REMANDS the decision of

the Commissioner for further proceedings not inconsistent with this decision.

## I.  PROCEDURAL HISTORY

        On May 8, 2003, Plaintiff filed an application for Disability Insurance benefits and

Supplemental Security Income benefits, alleging a disability onset date of February 6, 2003 due

to limitations related to torn rotator cuffs in both shoulders, torn ligaments in the left shoulder, and back problems.  On November 16, 2005,  Administrative Law Judge ("ALJ") Edmund Round determined Plaintiff retained a residual functional capacity ("RFC") for a range of light work, and therefore, was not disabled (Tr. 23-24).  On November 17, 2006, the Magistrate Judge issued a Report and Recommendation that Defendant's decision be reversed and remanded in order to evaluate whether the vocational expert's ("VE") adjusted figures amounted to a significant number of jobs (Tr. 306-23).  The Court adopted the Magistrate Judge's Report and Recommendation on December 4, 2006 (Id; U.S. District Court, Northern District of Ohio, Case No. 5:06-cv-1130, Doc. 15, 16).  The Appeals Council ordered the case to be remanded to the ALJ on December 21, 2006 (Tr. 325).  A subsequent hearing was held on May 9, 2007 (Tr. 539B).  On May 24, 2007, the ALJ determined Plaintiff had the RFC to perform a range of sedentary work, and therefore, was not disabled (Tr. 291-97). On appeal, Plaintiff claims the ALJ's determination was not supported by substantial evidence.

## II.  EVIDENCE

### A.  Personal and Vocational Evidence

Born on December 11, 1958 (age 48 at the time of the ALJ's determination), Plaintiff is a "younger individual." *See* 20 C.F.R. §§404.1563, 416.963.  Plaintiff graduated high school and has past relevant work as a carpenter (Tr. 22).

### B.  Medical Evidence

On April 29, 2003, Plaintiff was diagnosed by Michael Walker, M.D., with question Grade I AC separation of the left shoulder and left shoulder contusion (Tr. 98).  An MRI of Plaintiff's left shoulder in May 2003 showed AC joint separation (Tr. 140).  In June 2003,

Michael Paley, M.D., noted that an MRI of Plaintiff's cervical spine showed a bulging disc at C3-4, left central herniation at C5-6, central herniation at C6-7, small central herniation at T1-2, and multilevel bony foraminal stenosis (Tr. 141-42). In July 2003, Plaintiff underwent shoulder surgery (Tr. 216-17). After the surgery, his surgeon, Laurence H. Bilfield, M.D., reported that Plaintiff was doing well with no real difficulties (Tr. 213). Dr. Bilfield told Plaintiff to refrain from any activity until his next visit in one month (Id.).

In October 2003, a CT image showed degenerative changes with mild to moderate impingement on the right C6 nerve root (Tr. 138-39). There was no evidence of impingement on the spinal canal (Id.). In November 2003, due to neck, shoulder and arm pain, Plaintiff underwent neck surgery (Tr. 110). Almost four months after the surgery, Michael Eppig, M.D., Plaintiff's surgeon, reported that Plaintiff still complained of aches, pains, and stiffness (Tr. 224). He also reported that Plaintiff smelled of alcohol, that he moved well, had normal range of motion, and had a normal neurological examination (Id.).

In January 2004, Dr. Cirino, a psychiatrist, examined Plaintiff and diagnosed depressive disorder, history of substance abuse, and narcissistic traits (Tr. 194). Dr. Cirino assessed a Global Assessment of Functioning ("GAF") score of 55-60 (Id.). Plaintiff continued to seek counseling and mental health treatment at Portage Path Behavioral Health through July 2005, at which time his diagnoses were bipolar disorder and substance abuse disorder (Tr. 158, 160-91). During this time, Plaintiff reported somewhat less pain and that he had been doing some part-time remodeling (Tr. 166, 173, 184).

3

Sometime after examining Plaintiff in March 2005, Ronald Zimmerman, M.D., a psychiatrist at Portage Path Behavioral Health, opined that Plaintiff was moderately limited in a number of areas and was unemployable (Tr. 147-48).

Sometime after examining Plaintiff in May 2005, Dean Pahr, D.O., a specialist in pain management, opined that Plaintiff was unemployable due to fibromyalgia, low back problems, and a neck condition (Tr. 149-50). In June 2005, Dr. Philip Kennedy, Plaintiff's primary care physician, stated that Plaintiff had chronic and constant pain from severe fibromyalgia and was unemployable (Tr. 156-57). Dr. Kennedy opined that Plaintiff could stand/walk for 20 minutes at a time up to one hour per day, sit for 20 minutes at a time up to one hour per day, and lift/carry up to 25 pounds occasionally and six to ten pounds frequently (Tr. 157). Dr. Kennedy's progress note for June 2005 indicates that Plaintiff saw Dr. Kennedy to have his disability forms filled out and that Plaintiff felt he was disabled because of severe chronic pain from fibromyalgia, chronic right hip pain, and ankle pain, status post trauma (Tr. 398).

In August 2005, Dr. Pahr opined that Plaintiff could not work a full day due to severe pain (Tr. 219-21). Dr. Pahr noted that Plaintiff could use his hands for most repetitive actions, but that he could only sit for four hours non-consecutively, stand for one hour, and walk for one hour (Tr. 219-20). Also in August 2005, a physical therapist completed a physical capacity evaluation (Tr. 535). The therapist indicated that Plaintiff should avoid repetitive tasks, especially in overhead reaching; could occasionally lift and carry up to 38 pounds; could sit for one to two hours; could stand for 20 minutes; and should alternate sitting and standing with all home tasks (Id.).

4

Plaintiff was referred to Community Support Services, Inc. for assistance in health care in February 2006 (Tr. 476). Plaintiff's diagnosis was bipolar disorder and rule out narcissistic traits (Tr. 476). Plaintiff's GAF score was 52 (Id.)

In March 2006, an MRI showed lumbar scoliosis and congenital spinal stenosis, diffuse lumbar spondylosis with narrowing of the spinal canal at L3-4, L4-5, and L5-S1, and neural foraminal stenosis on the right at L3-L4 (Tr. 408). Also in March 2006, Dr. Bilfield opined that Plaintiff's mild asymmetric increased radio nuclide about his right hip joints was nonspecific, but could be associated with early degenerative change or mild inflammatory change (Tr. 410). In April 2006, Dr. Bilfield's impression was scoliosis, mild stenosis at L2-3 and L4-5, severe stenosis at L3-4, and deformity of the anterior superior end plate of L4 (Tr. 406).

Notes from Dr. Pahr dated April 2006 through September 2006 show that Plaintiff continued to have significant pain, but that he was doing well with a change in his pain medication (Tr. 456-59, 490). In May 2006, Plaintiff was examined by Cynthia Bamford, M.D. (Tr. 418-20). Dr. Bamford diagnosed lumbar stenosis and joint disease (Tr. 419). She opined that Plaintiff could handle objects, but could not lift, bend or extend, and could not sit, stand or walk for long periods of time (Id.).

In July 2006, Charlie Gould, Plaintiff's therapist, indicated that Plaintiff had some difficulty interacting with others but that his primary work-related limitations were physical (Tr. 421-22).

### C. Hearing Testimony

The ALJ asked VE Carol Mosley whether a hypothetical individual of Plaintiff's age, educational and vocational background could work if he were limited to a range of sedentary

work with a sit/stand option, involving no work above shoulder level with either hand or arm, and comprised of only simple, routine, low-stress, non-public tasks (Tr. 560-61).   The VE responded that such an individual would be able to perform the job of inspection worker (1,800 state jobs), assembly worker (2,800 state jobs), and sorter/packer (2,000 state jobs) (Tr. 567-68). The VE later testified that none of these jobs could be performed if the individual were precluded from repetitive handling and feeling (Tr. 571).

### III.  DISABILITY STANDARD

A claimant is entitled to receive Supplemental Security Income benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20. C.F.R. §§ 404.1505, 416.905.

### IV.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 Fed. Appx. 361, 362 (6th Cir. June 15, 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence.  *See Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a

reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* Indeed, the Commissioner's determination, if supported by substantial evidence, must stand, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V. ANALYSIS

### A. The ALJ's Decision to Conduct a De Novo Hearing

Plaintiff first argues that the ALJ erred by conducting a *de novo* hearing on remand. Plaintiff states that in the Magistrate Judge's Report and Recommendation (Tr. 306-23), which was adopted by the Court on December 4, 2006, the ALJ was directed on remand to "fully address the VE's adjusted figures, which account for the limitation of non-public tasks, in determining whether Plaintiff is capable of performing jobs that exist in significant numbers." Therefore, Plaintiff asserts, the sole issue for review was whether the adjusted figures constituted significant numbers. All other remaining issues were thus affirmed and became final for the purposes of res judicata. According to Plaintiff, any other inquiry on remand, without a showing

of a substantial change in circumstances, is inappropriate under *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841 (6th Cir. 1997).

Plaintiff's reliance on *Drummond* and res judicata is misplaced.  Under *Drummond*, when a claimant has filed two different applications for benefits and the ALJ's decision on the first application has become final, absent changed circumstances, the ALJ considering the second application for benefits is bound by the prior final decision under res judicata. *Id.* at 842. *Drummond* is inapplicable to the present case because although Plaintiff filed two different applications for benefits, there was not a prior final decision at the time he filed his second application.  Plaintiff filed his first application for benefits on May 8, 2003, alleging a disability onset date of February 2, 2003.  Plaintiff filed his second application for benefits on May 1, 2006.  On December 4, 2006, the Court reversed and remanded the ALJ's decision denying Plaintiff benefits on his first application.  On December 21, 2006, the Appeals Council vacated and remanded the case to the ALJ (Tr. 325).  Because the Appeals Council vacated and remanded the decision denying Plaintiff's first application for benefits, this decision did not become final. *See Wireman v. Comm'r of Soc. Sec.*, No. 02-5612, 60 Fed. Appx. 570 (6th Cir. 2003).  Accordingly, the ALJ was not bound by this decision when he conducted a new hearing on remand or considered Plaintiff's second application for benefits.

### B.  The ALJ's Decision to Not Obtain Medical Expert Testimony

Plaintiff next claims the ALJ erred by not obtaining testimony from a medical expert ("ME") in either the area of orthopedics or psychiatric matters to confirm that his RFC determination was accurate.  Although this claim was listed in Plaintiff's assignments of error, it was not addressed in the body of his brief.  Thus, it appears Plaintiff has abandoned this claim.

Accordingly, the Court finds that Plaintiff has failed to demonstrate that the ALJ erred by declining to obtain ME testimony.

### C.  The ALJ's Treatment of Plaintiff's Treating Doctors

Plaintiff also claims the ALJ erred by rejecting the opinions of his treating physicians, Drs. Immerman, Pahr, and Bamford.  Plaintiff's claim is without merit.

The opinions of treating physicians are afforded greater weight than those of physicians who have examined the claimant on consultation or who have not examined the claimant at all. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). Nonetheless, a statement by a physician as to whether a claimant is disabled or unable to work is not controlling. *See* 20 C.F.R. §§ 404.1527(e)(1) and 416.927(e)(1).  Indeed, an ALJ is not bound by the opinion of a claimant's treating physician; however, if he or she chooses to reject the opinion, he or she must articulate a reason for doing so. *See Wilson,* 378 F.3d at 545; *Shelman*, 821 F.2d at 321.

The ALJ is not required to credit a treating physician's opinion that is inconsistent with the objective medical evidence or to give substantial weight to a treating physician if his opinion is a mere conclusory statement, unsupported by clinical and/or diagnostic findings. *See Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 538 (6th Cir. 1981).  Indeed, where no objective medical evidence is presented and there is no explanation of a nexus between the conclusion of disability and physical findings, the ALJ may choose to completely disregard the treating physician's opinion. *See Cutlip v. Secretary of*

*Health & Human Servs.,* 25 F.3d 284, 287 (6th Cir. 1994); *Higgs v. Bowen,* 880 F.2d 860, 863-64 (6th Cir. 1988).

### 1. Dr. Immerman

In March 2005, Dr. Immerman completed a mental functional capacity assessment, which he indicated was based on "multiple clinical interviews, psychiatric evaluation, review of previous medical records" (Tr. 148), however, there is no record of any interviews or evaluations of Plaintiff by Dr. Immerman.  In the assessment, Dr. Immerman opined that out of twenty areas of mental functioning, Plaintiff is not significant limited in three areas, moderately limited in ten areas, and markedly limited in one area (Tr. 147).  Dr. Immerman concluded that Plaintiff is unemployable (Tr. 148).

The ALJ found that Dr. Immerman's opinion was not entitled to any probative weight because it was not supported by objective clinical signs or findings and because it was an opinion that Plaintiff is disabled, which is an opinion on an issue reserved to the Commissioner (Tr. 294-95).  There is substantial evidence to support the ALJ's treatment of Dr. Immerman's opinion.  First, the ALJ gave adequate reasoning for rejecting Dr. Immerman's opinion.  It was not accompanied by any records of interviews or evaluations of Plaintiff that would support its conclusions.  And, Dr. Immerman's opinion that Plaintiff is disabled is not controlling. *See* 20 C.F.R. § 416.927(e)(1).  Because a claimant's employability,  *i.e.,* whether he is disabled, is an issue ultimately reserved to the Commissioner, a physician's opinion on this topic is not entitled to any special significance. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997); *see also* 20 C.F.R. §§ 404.1527(e)(1)-(3).  Second, the ALJ concluded Plaintiff is moderately limited in all three areas of mental functional limitation (Tr. 289), which appears to

essentially accommodate the limitations assessed by Dr. Immerman in his mental functional capacity evaluation.

## 2. Dr. Pahr

Dr. Pahr saw Plaintiff in May and June 2005, completed an RFC assessment in August 2005, and treated Plaintiff again from February to September 2006. During May and June 2005, Dr. Pahr noted fibromyalgia, lumbar spondylosis without myelopathy, lumbar canal stenosis, decreased ROM, back spasms, and pain in the hip (Tr. 149). In his August 2005 RFC assessment, Dr. Pahr opined that Plaintiff could sit for four hours (not consecutive), stand one hour, walk one hour, work zero hours, and never squat, crawl, stoop, crouch or kneel (Tr. 219-20). He noted x-rays and muscle spasms as objective signs of Plaintiff's pain (Tr. 221). From February to September 2006, Plaintiff saw Dr. Pahr for pain management. Dr. Pahr noted that Plaintiff insisted on trying a different medication in February and he was switched from methadone to Kadian, with good results (Tr. 459-60). Dr. Pahr indicated that Plaintiff demonstrated pain behavioring in April, June, and August (Tr. 455-59). Plaintiff received two injections in September (Tr. 453-54). Dr. Pahr's treatment notes do not indicate many objective findings, aside from a short gait and muscle spasms.

The ALJ found Dr. Pahr's August 2005 opinion was not entitled to probative weight because it was undercut by Dr. Pahr's repeated observations during his 2006 examinations that Plaintiff presented with pain behavioring and because it was an opinion that Plaintiff is disabled, which is an opinion on an issue reserved to the Commissioner. There is substantial evidence to support the ALJ's treatment of Dr. Immerman's opinion. The ALJ gave adequate reasoning for rejecting Dr. Pahr's opinion. It was not accompanied by many objective findings, aside from the

observation that Plaintiff had a short gait and muscle spasms, that would support its severe conclusions. And, Dr. Pahr's opinion that Plaintiff is disabled is not controlling because the issue of disability is reserved to the Commissioner. *See* 20 C.F.R. § 416.927(e)(1); *Walters*, 127 F.3d at 530-31. Finally, the ALJ appropriately found that Dr. Pahr's opinion was undercut by his observations that Plaintiff exhibited pain behavioring during his examinations.

### 3. Dr. Bamford

Dr. Bamford saw Plaintiff once on May 3, 2006 for a consultative examination (Tr. 418). Plaintiff reported numbness in the hands at this visit, however, Dr. Bamford found normal muscle strength, tone, and coordination in Plaintiff's arms and legs (Tr. 414). Dr. Bamford also noted that Plaintiff had no tremors or other abnormal movements (Tr. 415).

Plaintiff claims the ALJ's RFC should have included have included a limitation of no repetitive tasks because Dr. Bamford stated that Plaintiff had numbness in his hands and an August 2005 report states that Plaintiff should avoid repetitive tasks. Plaintiff's claim is not well taken. First, as a consultative examiner, Dr. Bamford does not qualify as Plaintiff's treating physician. Second, although Plaintiff asserts that Dr. Bamford found numbness, it appears that Dr. Bamford was merely recording Plaintiff's reported complaints. Finally, although Plaintiff asserts that an August 2005 report states that he should avoid repetitive tasks, the report actually states that Plaintiff should avoid repetitive tasks "especially in reaching overhead" (Tr. 535). The ALJ included a limitation for no above shoulder work in either hand or arm (tr. 560-61), which appears to incorporate the limitation listed in the report.

### D. The ALJ's RFC Determination

Plaintiff next asserts the ALJ's determination that Plaintiff can perform a significant number of jobs in the national economy is not supported by substantial evidence because the ALJ relied on VE testimony that is inconsistent with the *Dictionary of Occupational Titles* ("DOT") in violation of Social Security Regulation No. 00-4p.  Plaintiff argues that the ALJ's hypothetical and RFC finding limit Plaintiff to a range of sedentary work, yet all three of the jobs identified by the VE in response to the ALJ's hypothetical are light level in the DOT.  The ALJ specifically identified these three jobs as support for his conclusion that Plaintiff is capable of performing a significant number of jobs in the national economy.  Plaintiff's argument is well taken.

Once it is determined a claimant does not have the RFC to perform his past relevant work, the burden shifts to the Commissioner to show the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy. *See Foster v. Halter*, 279 F.3d 348 (6th Cir. 2001); *Cole v. Secretary of Health & Human Servs.*, 829 F.2d 768, 771 (6th Cir. 1987).  "To meet this burden, there must be a finding supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Secretary of Health & Human Servs*., 820 F.2d 777,779 (6th Cir. 1987).  The testimony of a VE in response to a hypothetical question may serve as substantial evidence of a claimant's vocational qualifications to perform certain jobs. *See id.*

Social Security Ruling No. 00-4p provides additional regulations applicable to occupational evidence provided by a VE.  The ruling states in relevant part:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> * * *
>
> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between the VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

S.S.R. No. 00-4p.  The language of this ruling thus places an affirmative duty on an ALJ to elicit a reasonable explanation for apparent conflicts before relying on VE occupational evidence testimony.  However, the ruling does not address the obligations of an ALJ when a conflict is not apparent.  The ruling also places an affirmative duty on an ALJ when the VE provides evidence about the requirements of a job or occupation to ask the VE whether the evidence she or he has provided conflicts with the DOT.  In *Lancaster v. Comm'r of Soc. Sec.*, 228 Fed. Appx. 563, 574 (6th Cir. 2007), the Sixth Circuit acknowledged that courts are divided as to whether the failure of an ALJ to inquire into DOT inconsistencies entitles a Plaintiff to relief.  While some courts have held that an ALJ's failure to ensure that there is not a conflict is reversible error, others have found that a failure to meet the procedural requirements of Social Security Ruling No. 00-4p does not give the claimant a right of automatic remand.

14

In the present case, the ALJ asked the VE to consider whether a hypothetical individual of Plaintiff's age, educational. and vocational background could perform any jobs if he were limited to a range of sedentary work with a sit/stand option, involving no work above shoulder level with either hand or arm, and comprised of only simple, routine, low-stress, non-public tasks (Tr. 560-61).  The VE gave the following as examples of work such a hypothetical worker could perform: inspection worker (1,800 state jobs), assembly work (2,800 state jobs), and sorter/packer work (2,000 state jobs) (Tr. 567-68).  The VE testified that all of the jobs would be at the sedentary exertional level within the framework of the ALJ's hypothetical (Tr. 567).  The VE identified each of these jobs by their individual DOT codes (inspection worker 559.687-074, assembly work 706.684-022, and sorter/packer work 222.687-010) and testified as to some of their specific job requirements, such as the skill level and vocational preparation required (Tr. 567-68).  The ALJ did not ask the VE if her testimony was consistent with the DOT, yet he stated in his written decision that the VE's testimony "is consistent with the information contained in the DOT (Social Security Ruling 00-4p)" (Tr. 297).  An examination of the DOT definitions for the three jobs identified by the VE shows that her testimony is not consistent with the DOT because she testified that each of these jobs would be "sedentary," but the DOT classifies each of these jobs as "light."

The Court finds that under the circumstances of this case, the ALJ failed to comply with Social Security Ruling No. 00-4p, and this failure prevented the ALJ from satisfying his burden at Step Five of demonstrating that Plaintiff is capable of performing a significant number of jobs. This finding is consistent with the findings of other district courts in the Sixth Circuit that have addressed this issue. *See Brazle v. Astrue*, No. 2:06cv0057, 2008 U.S. Dist. LEXIS 25734, at *60

(M.D. Tenn. 2008) (concluding that "the ALJ has an affirmative obligation to inquire regarding the existence of possible conflicts and, in the presence of apparent conflicts, to ask the VE to provide a reasonable explanation for them"); *McKaughan v. Astrue*, No. 1:06cv0056, 2008 U.S. Dist. LEXIS 25745, at *51-52 (M.D. Tenn. 2008) (holding that the Commissioner failed to meet his burden at Step Five to show Plaintiff could perform a significant numbers of jobs because there were inconsistencies between the VE's testimony and the DOT and the ALJ failed to inquire about the existence of possible conflicts or elicit any testimony from the VE explaining the conflicts); *Young v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 644, 652 (E.D. Mich. 2004) (finding the ALJ's determination that the plaintiff could perform a significant number of jobs was not supported by substantial evidence because the ALJ had a duty to elicit a reasonable explanation for an apparent unresolved conflict and there was no attempt on the part of the ALJ to comply with SSR No. 00-4p); *Teverbaugh v. Comm'r of Soc. Sec.*, 258 F. Supp. 2d 702, 705-06 (E.D. Mich. 2003) (holding that the ALJ failed to meet his burden at Step Five because the ALJ failed to ask the VE whether the jobs she identified as consistent with the claimant's RFC conflicted with the DOT).  The ALJ in this case specifically relied on the DOT job titles and classifications identified by the VE and stated that the VE's testimony was consistent with the DOT.  However, the ALJ never asked the VE whether her testimony was consistent with the DOT, and in fact, her testimony was not consistent.  Thus, the record does not reflect any attempt on the part of the ALJ to comply with Social Security Ruling No. 00-4p.

Citing *Wright v. Massanari*, 321 F.3d 611 (6th Cir. 2003) and *Martin v. Comm'r of Soc. Sec.*, No. 04-4551, 170 Fed. Appx. 369 (6th Cir. 2006), Defendant contends that because Plaintiff did not raise the issue of a conflict at the administrative hearing, the ALJ had no reason

16

to believe there was a conflict and no duty to develop the matter further.  For the reasons discussed below, the Court finds that these cases do not benefit Defendant and his arguments under the circumstances of this case.

The *Wright* court held that the plaintiff failed to show the ALJ erred in evaluating the testimony of the VE. 321 F.3d at 616.  In *Wright*, the VE identified two jobs that the unskilled plaintiff could perform, but the DOT described the occupations as semi-skilled. *Id.*  The court noted that pursuant to *Conn v. Secretary of Health & Human Servs.*, 51 F.3d 607, 610 (6th Cir. 1995), "the ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's classifications." *Wright*, 321 F.3d at 616.  *Wright* is distinguishable from the present case.  First, the case does not mention Social Security Ruling No. 00-4p or address the ALJ's affirmative obligations under this ruling.  Second, *Wright* follows the principle that neither an ALJ nor a VE is required to rely on the DOT classifications.  However, the record indicates that both the ALJ and the VE did in fact rely on the DOT classifications in the present case.  Rather than list jobs by general names, the VE identified specific DOT job titles and codes.  The ALJ listed these DOT job titles and codes in his written decision and relied upon the VE's testimony that Plaintiff could perform these specific jobs.

*Martin* is also distinguishable from the present case.  The *Martin* court concluded the ALJ satisfied his burden of demonstrating that the plaintiff could perform a significant number of jobs in the national economy. 170 Fed. Appx. at 374-75.  In *Martin*, the VE testified that the plaintiff could work as an assembler, telephone operator, or general office clerk. *Id.* at 373-74. The ALJ asked the VE whether there was a conflict between the DOT description of the specific

17

vocational preparation ("SVP") for the general office clerk position. _Id._ at 374.  Although the VE testified that there was not a conflict, there was in fact a conflict between the VE's testimony and two of the positions. _Id._  Plaintiff first raised the issue that a conflict existed in her brief to the district court. _Id._  Plaintiff argued that because the VE's testimony was incorrect with respect to two of the positions, it could not be deemed credible with regard to the remaining position. _Id._ The court noted that consistent with Social Security Ruling No. 00-4p, the ALJ asked if there was a conflict and the VE testified that there was not. _Id._  The court also noted that the plaintiff did not bring the VE's mistake to the ALJ's attention. _Id._  The court concluded that nothing in Social Security Ruling No. 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct. 170 Fed. Appx. at 374-75.  The court also concluded that even if the two positions about which there were inconsistencies had been excluded, the ALJ still could have reasonably found the plaintiff capable of performing the remaining position, for which a significant number of jobs (870) were available. _Id._  Unlike in _Martin_, the ALJ in the present case never asked the VE whether there was a conflict with the DOT.  Also unlike in _Martin_, all three of the positions identified by the VE in the present case are in conflict.  If all three of the positions about which there were inconsistencies had been excluded, no jobs would remain.

Based upon the above, the Court finds the ALJ's conclusion that Plaintiff can perform a significant number of jobs is not supported by substantial evidence.

## VI.  **DECISION**

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the decision of the Commissioner is REVERSED and REMANDED to the Social Security Administration for further proceedings not inconsistent with this decision.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: May 13, 2008